J-S05038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE DOLORES SOLORZANO-ROJAS, | |
| Appellant | No. 670 MDA 2015 |

Appeal from the Judgment of Sentence October 27, 2014
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0004370-2008

BEFORE:  BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                        **FILED FEBRUARY 03, 2016**

Appellant, Jose Dolores Solorzano-Rojas, appeals *nunc pro tunc* from the judgment of sentence imposed following his jury conviction in his second trial of three counts of delivery of a controlled substance and two counts of possession with intent to deliver a controlled substance (PWID).[1]  Counsel for Appellant has petitioned to withdraw on the ground that his issue on appeal is wholly frivolous.[2]  We grant counsel's petition to withdraw and affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] *See Anders v. California*, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

We take the following facts and procedural history from our independent review of the record, including notes of testimony from Appellant's August 12-15, 2014 jury trial. In May of 2008, Pennsylvania State Police Trooper Christopher Keppel led an undercover drug distribution investigation focused on Appellant, and he executed a series of controlled buys of cocaine and marijuana through a confidential informant (CI). On May 9, 2008, the CI arranged to purchase 3.5 grams of cocaine and a quarter pound of marijuana from Appellant for $700.00. Trooper Keppel and the CI drove to a Blockbuster parking lot as Appellant instructed, and Appellant parked his white Acura one parking space away from them. The CI entered the passenger side of Appellant's vehicle, and Trooper Keppel observed Appellant give the CI a package in exchange for money. The CI immediately re-entered Trooper Keppel's vehicle and the trooper took custody of the package of drugs.

On May 14, 2008, the CI arranged to purchase fourteen grams of cocaine from Appellant for $720.00. Trooper Keppel and the CI again went to an agreed-upon parking lot, and Appellant parked his white Acura directly behind the trooper's vehicle. The CI entered Appellant's vehicle, and exchanged money for cocaine. The CI immediately returned to Trooper Keppel's vehicle and the trooper took custody of the drugs.

On May 20, 2008, the CI arranged to purchase a quarter pound of marijuana from Appellant for $350.00. Trooper Keppel and the CI drove to the agreed-upon parking lot and pulled into the parking space next to

Appellant's Acura. After the CI and Appellant completed the transaction in the Acura, the CI returned to Trooper Keppel's vehicle and gave him the drugs.

On May 21, 2008, based on the controlled buys, police obtained a search warrant for the house where they believed Appellant resided—927-1/2 Carlisle Street, which is located approximately two blocks from where the controlled buys occurred.[3] Trooper Keppel instructed the CI to arrange a final drug purchase from Appellant of three ounces of cocaine, and he planned to arrest Appellant before the transaction was executed. Trooper Keppel and the CI arrived at the pre-arranged parking lot and Appellant parked his Acura one space away from them. Pursuant to Trooper Keppel's instructions, the CI approached Appellant's vehicle, and nodded his head to indicate that the drugs were inside. Trooper Keppel then signaled his team to arrest Appellant. Appellant exited his vehicle, shoved the CI, and threw an item from his person before the officers took him into custody. Trooper Keppel recovered the item thrown by Appellant, a bag of cocaine, in the immediate vicinity. Police then proceeded with Appellant to 927-1/2 Carlisle Street to execute the search warrant.

---

[3] Police checked township records to confirm that this was Appellant's address. (*See* N.T. Trial, 8/13/14, at 172-73).

After police secured the residence, they brought Appellant into the kitchen, and advised him of his ***Miranda***[4] rights. Appellant admitted that he lived at the residence with his wife and three children. Police found various items bearing Appellant's name, including photocopies of his driver's license, bills, checks, and an insurance policy cover sheet throughout the residence.[5] Police also recovered the following items from the residence: a digital scale; three boxes of sandwich bags; a bag of small Ziploc bags; a bag of corner bags; a bottle of inositol;[6] 110 grams of cocaine; a small bag of marijuana; six packaged sums of cash, in the amounts of $1,004.00, $2,000.00, $2,000.00, $2,000.00, $1,000.00, and $1,000.00. Some of the serial numbers on the currency recovered from the residence matched the serial numbers on the official funds used during the May 20, 2008 controlled buy.

On May 4, 2009, Appellant proceeded to a jury trial, and the jury found him guilty of various drug-related offenses. On July 27, 2009, the trial court sentenced him to an aggregate term of not less than seven nor more than fourteen years' incarceration. On direct appeal, this Court

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[5] The residence is a double house and the address of the adjoining residence is 972 Carlisle Street. (***See*** N.T. Trial, 8/13/14, at 165). Some of the items recovered from 972-1/2 Carlisle Street bearing Appellant's name listed the address of the adjoining residence, 972 Carlisle Street, instead of 972-1/2 Carlisle Street. (***See id.*** at 171-72).

[6] Inositol is a vitamin supplement used as a cutting agent for cocaine. (***See*** N.T. Trial, 8/14/14, at 256).

vacated the judgment of sentence and remanded for a new trial. (**See Commonwealth v. Solorzano-Rojas**, No. 35 MDA 2010, unpublished memorandum at *1, *10 (Pa. Super. filed Sept. 14, 2010)).[7] The Pennsylvania Supreme Court denied the Commonwealth's petition for allowance of appeal on March 27, 2013. (**See Commonwealth v. Solorzano-Rojas**, 63 A.3d 1247 (Pa. 2013)).

On August 12, 2014, Appellant proceeded to a second jury trial, and the jury convicted him of the above-stated offenses. On October 27, 2014, the trial court sentenced Appellant to an aggregate term of not less than seven nor more than fourteen years' incarceration, in accordance with the mandatory minimum sentence requirements for drug trafficking. On March 16, 2015, following Appellant's timely filing of a post-sentence motion and a hearing, the court entered an order re-sentencing him without application of the mandatory minimum provisions,[8] to an aggregate term of not less four and one half nor more than nine years' incarceration. On April 16, 2015, one day after the appeal period expired, Appellant simultaneously filed a

---

[7] This Court's disposition was based on its conclusion that the trial court failed to take sufficient protective measures to ensure the integrity of the jury's function after an alternate juror was impaneled during jury deliberations. (**See id.** at *7, *9-10).

[8] **See Commonwealth v. Fennell**, 105 A.3d 13, 20 (Pa. Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015) (holding mandatory minimum sentencing statute relating to drug trafficking unconstitutional in light of **Alleyne v. United States**, 133 S.Ct. 2151 (2013)).

petition to file a notice of appeal *nunc pro tunc* and a notice of appeal. On April 17, 2015, the trial court entered an order granting the petition and accepting the notice of appeal as timely.[9]

On August 10, 2015, counsel filed an **Anders** brief and a petition to withdraw as counsel stating his belief that there are no non-frivolous issues to raise on appeal. (**See** Petition to Withdraw as Counsel, 8/10/15, at unnumbered page 1 ¶ 3). Counsel submitted to this Court a copy of his letter to Appellant, enclosing a copy of the **Anders** brief. (**See** Letter from Anthony J. Tambourino, Esq. to Appellant, 8/10/15, at unnumbered page 1). Appellant has not responded.

> [I]n the **Anders** brief that accompanies . . . counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

---

[9] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on June 8, 2015. The trial court filed an opinion on June 24, 2015. **See** Pa.R.A.P. 1925.

> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel to either comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

*Commonwealth v. O'Malley*, 957 A.2d 1265, 1266 (Pa. Super. 2008) (citations omitted).

In the instant case, counsel has complied with the **Anders** and **Santiago** requirements. He has submitted a brief that summarizes the case, (**see Anders** Brief, at 5-9); referred to anything that might arguably support the appeal, (**see id.** at 10-13); and set forth his reasoning and conclusion that the appeal is frivolous, (**see id.** at 13-14). **See Santiago**, **supra** at 361. Counsel has sent Appellant a letter enclosing a copy of the **Anders** brief and petition to withdraw, and notifying him of his right to retain new counsel or proceed *pro se*. Because counsel's petition and brief satisfy the requirements of **Anders** and **Santiago**, we will undertake our own review of the appeal to determine if it is wholly frivolous. **See O'Malley**, **supra** at 1266.

The **Anders** brief raises one issue for our review: "Whether the Commonwealth failed to present sufficient evidence in order to convict Appellant beyond a reasonable doubt of possession with intent to deliver, because the Commonwealth failed to prove Appellant actually or

constructively possessed the drugs found in 972-1/2 Carlisle Street?" (**Anders** Brief, at 4) (some capitalization omitted). This issue does not merit relief.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Giordano*, 121 A.3d 998, 1002-03 (Pa. Super. 2015) (citations omitted).

The Controlled Substance, Drug, Device and Cosmetic Act defines the crime of PWID as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> \* \* \*
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate

State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

In the instant case, Appellant challenges the element of possession, arguing that the Commonwealth failed to establish his actual or constructive possession of the drugs recovered from 972-1/2 Carlisle Street. (*See Anders* Brief, at 11). Appellant denies that he resided at the 972-1/2 Carlisle Street address, and points out that the many of the items police found bearing his name list his address as 972 Carlisle Street, not 972-1/2 Carlisle Street. (*See id.* at 13). This issue lacks merit.

We begin by observing that because Appellant was not in physical possession of the drugs recovered from 972-1/2 Carlisle Street, the Commonwealth was required to establish that he had constructive possession of them. *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (citation omitted).

Here, prior to executing the search warrant, police checked township records to confirm that 972-1/2 Carlisle Street was Appellant's address.

- 9 -

(*See* N.T. Trial, 8/13/14, at 172-73). Trooper Keppel testified that, when he brought Appellant to 972-1/2 Carlisle Street, Appellant admitted that he lived at the residence with his wife and children. (*See id.* at 141-42). Trooper Keppel further testified that numerous documents and paperwork bearing Appellant's name were found throughout the residence. (*See id.* at 152, 171-72, 179-80). The trooper indicated that, although some of the items bearing Appellant's name listed the address of the adjoining residence, 972 Carlisle Street, instead of 972-1/2 Carlisle Street, all of these items were found in the 972-1/2 residence. (*See id.* at 171, 179-80). In addition, after the search, police traced some of the cash recovered from 972-1/2 to the currency used during one of the controlled buys, thereby further linking Appellant to that residence. (*See id.* at 153-54, 177).

In contrast, Appellant testified that he resided at 972 Carlisle Street, and not at the 972-1/2 Carlisle Street residence where the drugs and items related to drug trafficking were found. (*See* N.T. Trial, 8/14/14, at 293, 297-98). He stated that, although he sometimes visited friends at the 972-1/2 residence, he did not keep any items or paperwork there. (*See id.* at 293). When questioned by the Commonwealth about Trooper Keppel's testimony to the contrary, Appellant averred that the trooper was lying about where the items bearing his name were found. (*See id.* at 295-98).

Based on the totality of the circumstances, and viewing the evidence in the light most favorable to the Commonwealth as we must under our standard of review, we conclude that there was ample evidence to support

the jury's determination that Appellant constructively possessed the narcotics found at 972-1/2 Carlisle Street. *See Giordano*, *supra* at 1002; *Brown*, *supra* at 430. The evidence presented by the Commonwealth established that Appellant was selling drugs and that he resided at 972-1/2 Carlisle Street, where a significant amount of cocaine and various items used in drug trafficking were found. The jury did not find Appellant's testimony regarding his residence credible, and it, as finder of fact, was "free to believe all, part or none of the evidence." *Giordano*, *supra* at 1003. Accordingly, Appellant's issue on appeal does not merit relief. Furthermore, after independent review, we determine that there are no other non-frivolous bases for appeal, and this appeal is "wholly frivolous." *O'Malley*, *supra* at 1266.

Judgment of sentence affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2016